UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TEAL NICHOLAS TERRELL,<br><br>Defendant. | No. 2:11-CR-0196-LRS-1<br><br><br>**ORDER GRANTING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE** |

**BEFORE THE COURT** is Petitioner Teal Terrell's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence in Light of *Johnson v. United States*, 135 S.Ct. 2551(2015) (ECF No. 46). The Government is opposed to the §2255 Motion (ECF No. 54) and has filed a Motion to Hold Petitioner's Motion in Abeyance (ECF No. 50), to which the Defendant is opposed. Oral argument was held on June 16, 2016. Supplemental materials have been filed since that time. (ECF Nos. 59, 60, 61, 62, 63, 64). For the reasons which follow, the court grants Mr. Terrell's Motion, vacates the judgment, and will schedule this matter for resentencing.

///

ORDER - 1

## I.    BACKGROUND

### A. **Plea and Sentence**

In December 2011, Mr. Terrell was charged with Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1).

In March 2012, Mr. Terrell pleaded guilty pursuant to a written Plea Agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) to an Information Superseding Indictment charging him Possession of a Stolen Firearm, in violation of 18 U.S.C. § 922(j).  In his Plea Agreement, Mr. Terrell admitted his offense conduct involved storing a loaded stolen firearm in a dresser drawer in his bedroom. The parties jointly recommended a sentencing range of 100-120 months of imprisonment. The Plea Agreement acknowledged, that if Terrell had been convicted of the original Felon in Possession charge, the parties believed he would qualify as an Armed Career Criminal under 18 U.S.C. § 924(e) and would face a statutory mandatory minimum term of fifteen years of incarceration.  (ECF No. 24 at 2, ¶3). In the section of the Plea Agreement discussing the U.S. Sentencing Guidelines, the parties stipulated that the base offense level under the U.S. Sentencing Guidelines was enhanced to twenty-four "because he has been convicted of at least two prior crimes of violence. *See* U.S.S.G. § 2K2.1(a)(2)."  (ECF No. 24, ¶ 8).  They further stipulated to a 2-level enhancement because the firearm was stolen and a 3-level downward reduction for acceptance of responsibility. Terrell waived his right to challenge his sentence in a collateral attack under § 2255.  (ECF No. 24, ¶ 16).

The plea agreement acknowledged that under Rule 11(c)(1)(C), the court had discretion to accept or reject the proposed agreement and recommended sentence. If

the court accepted the agreement, then under Rule 11(c)(1)(C) the recommended sentence would be binding on the court. On the other hand, if the court rejected the recommended sentence, the parties could withdraw from the agreement.

The presentence report (PSR) found that Mr. Terrell would most likely have met the statutory definition of Armed Career Criminal and been subject to a mandatory minimum 15-year sentence if he had been convicted of the §922(g) count.    (ECF No. 35 at ¶ 185).  As for the base offense level, § 2K2.1 of the Guidelines calculates a defendant's base offense level depending on how many prior convictions the defendant sustained for "either a crime of violence or a controlled substance offense."  At the time of Mr. Terrell's sentencing, U.S.S.G. § 4B1.2(a) defined the term "crime of violence" for purposes of §2K2.1(a) as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

Although Mr. Terrell had three Washington state predicate felony convictions for harassment, second degree assault, and residential burglary, for purposes of determining the base offense level they were counted as one crime of violence because they were charged together and adjudicated on the same date.  Accordingly, the PSR concluded that pursuant to U.S.S.G. §2K 2.1(a)(4)(A), the base offense level

ORDER - 3

was 20 (not 24, as the parties had stipulated) for Mr. Terrell had *one* qualifying predicate crime of violence.

Based on a total offense level of 19 and a criminal history category of VI, the calculated advisory guideline range was 63 to 78 months.[1]

At sentencing, the court accepted the PSR without change and accepted the Rule 11(c)(1)(C) plea agreement, imposing the above-Guideline 100-month sentence urged by the Defendant. This sentence is below the 120-month statutory maximum imposed for violations of 18 U.S.C. §922(j).

Mr. Terrell's Judgment was entered July 12, 2012. Mr. Terrell did not appeal his conviction or sentence.   According to the BOP inmate locater (www.bop.gov), Mr. Terrell's release date is April 2, 2019.

### B. Post-Sentencing Developments in the Law

If an individual is convicted under 18 U.S.C. § 922(g) (felon in possession of a firearm), the Armed Career Criminal Act  ("ACCA") requires courts to impose a sentence of not less than 15 years on specified defendants who have three previous convictions for a violent felony or a serious drug offense or both. 18 U.S.C. § 924(e)(1). Section 924(e)(2)(B) defines "violent felony" to include a "any crime

---

[1] Had the adjusted offense level been a 23, as anticipated by the parties' plea agreement, the guideline range would have been 92-115 months.

ORDER - 4

punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, _or otherwise involves conduct that presents a serious potential risk of physical injury to another_[.]" 18 U.S.C. § 924(e)(2)(B) (emphasis added). In June 2015, the Supreme Court struck the thirteen word so-called "residual clause" (underlined text) of ACCA for being unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. _Johnson v. United States_, 135 S. Ct. 2551, 2555-57. "The void-for-vagueness doctrine prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.' " _Welch_, 136 S. Ct. at 1262 (_quoting Johnson_, 135 S. Ct. at 2556). Applying the vagueness doctrine, the Supreme Court concluded that the ACCA's residual clause was unconstitutional under both standards: it failed to provide "fair notice to defendants" and "invite[d] arbitrary enforcement by judges," and consequently, "[i]ncreasing a defendant's sentence under the clause denies due process of law." _Johnson_, 135 S. Ct. at 2557.

On April 18, 2016, the Supreme Court held in _Welch v. United States_ that _Johnson_ announced a new substantive rule that applies retroactively to cases on collateral review. _Welch v. United States_, 136 S.Ct. 1257, 1264–65 (2016). The

ORDER - 5

Court explained that, by striking down the ACCA's residual clause as void for vagueness, *Johnson* changed the ACCA's substantive reach and altered "the range of conduct or the class of persons that the [Act] punishes." *Id*. at 1265 (brackets in original) (citation omitted). Applying the retroactivity framework set forth in *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny, the Court further stated that *Johnson* was not a procedural decision because it "had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced under the [ACCA]." *Id*. Accordingly, the Court ruled that "*Johnson* is thus a substantive decision and so has retroactive effect under *Teague* in cases on collateral review." *Id*.

Like ACCA and as stated above, the Sentencing Guidelines also factor in higher sentencing ranges on defendants with previous convictions for violent felonies. The Guidelines definition of "crime of violence" under §4B1.2(a) has been identical to the ACCA residual clause. *United States v. Spencer*, 724 F.3d 1133, 1138 (9th Cir. 2013) (there is "no distinction between the terms 'violent felony' [as defined in the ACCA] and 'crime of violence' [as defined in § 4B1.2(a)(2) of the Sentencing Guidelines] for purposes of interpreting the residual clause[s]"). However, *Johnson* failed to discuss the Guidelines. Since *Johnson*, Courts of Appeal have reached different decisions on whether a constitutional vagueness challenge applicable to a statute as in ACCA applies equally to the advisory Guidelines and whether any such rule should have retroactive application to cases on collateral attack. Only one circuit has affirmatively held that *Johnson* does not invalidate the Guideline

§4B1.2's residual clause. *U.S. v. Matchett*, 802 F.3d 1185 (11th Cir. 2015). The others have either determined or assumed the Guidelines' residual clause is invalid. There is even less consensus on the issue of retroactivity. *Compare In re Hubbard*, 825 F.3d 225 (4th Cir. 2016) *(Johnson* may be retroactive as to the Guidelines); *United States v. Hurlburt*, 2016 WL 4506717 (7th Cir. Aug. 29, 2016) (same); *In re Patrick*, 2016 WL 4254929 (6th Cir. Aug. 12, 2016) (same), *with Donnell v. United States*, 826 F.3d 1014 (8th Cir. 2016) (*Johnson* was not retroactive as the Guidelines); *In re Arnick*, 826 F.3d 787 (5th Cir. 2016) (same); *In re Griffin*, 823 F.3d 1350 (11th Cir. 2016) (same).

On June 27, 2016, the Supreme Court granted certiorari in *Beckles v. United States*, No. 15-8544, to resolve this split. Three questions before it are: (1) whether the constitutional rule announced in *Johnson* applies to the residual clause of USSG § 4B1.2(a)(2); (2) if so, whether challenges to § 4B1.2(a)(2) are cognizable on collateral review; and (3) whether possession of a sawed-off shotgun remains a "crime of violence" based on the commentary to § 4B1.2. Oral argument has been scheduled for November 28, 2016.

**C. Terrell's §2255 Motion**

On May 17, 2016, Mr. Terrell filed a Motion to Vacate Sentence and for Resentencing (ECF No. 46). The Motion makes two contentions he claims lead to the conclusion that he is serving a sentence in violation of due process and provide

a basis to order his resentencing:  First, Mr. Terrell asserts he was "improperly threate[n]ed with an Armed Career Criminal Act enhanced sentence on the basis of his conviction for Washington residential burglary," which under *Johnson* no longer qualifies as a predicate "violent felony" offense.  (ECF No. 46 at 1). He claims this unfounded "ACCA exposure" was a peril that colored the plea negotiations and was the driving force behind his decision to enter into the Rule 11(c)(1)(C) agreement. Second, Terrell extrapolates the holding in *Johnson* and argues that it likewise invalidates the residual clause of the U.S. Sentencing Guidelines §4B1.2(a) and should apply retroactively to this collateral attack. He contends under *Johnson*, his Washington residential burglary cannot qualify as a "crime of violence" under § 4B1.2(a), although he admits his harassment conviction still qualifies. Terrell does not dispute the accuracy of the court's calculation of the Guideline range and concedes it would remain the same today.   Mr. Terrell still maintains his sentence violates due process because his "Guideline [calculation] was improperly enhanced on the basis of his residential burglary conviction." (ECF No. 55 at 2).

Mr. Terrell claims both his "crime of violence and ACCA exposure formed the framework of the Court's decision to accept the [Rule 11(c)(1)(C)] agreement," and therefore the Rule 11(c)(1)(C) nature of the agreement does not deprive the court of jurisdiction to grant relief.

The Government does not contest that if Terrell were sentenced today, his Washington state residential burglary would not "pass muster as a predicate offense under the ACCA."  However, the Government urges the court to deny Mr. Terrell's Motion because the sentence was derived from the freely negotiated terms of the Rule 11(c)(1)(C) agreement, which were correct at the time, are contractual in

nature, and involved a waiver of collateral attack.  The Government contends extending *Johnson* into this plea negotiation context would "entangle the Courts into a process which as a matter of sound precedent and common practice has never involved the Courts."  (ECF No. 54 at 3).

## II.    STANDARD OF REVIEW

The language of 28 U.S.C. § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review.  *See United States v. Addonizio*, 442 U.S. 178, 185 (1979).  District court may entertain petitions for the writ of habeas corpus only when authorized by statute.  Among the circumstances under which courts are permitted to use the writ, and the circumstances at issue in this case, are when the sentence was imposed in violation of the Constitution or laws of the United States or when the sentence is "otherwise subject to collateral attack." § 2255(a); *see also United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010).  A sentence is otherwise subject to collateral attack if there is an error constituting a "fundamental defect which inherently results in a complete miscarriage of justice," *Addonizio*, 442 U.S. at 185, or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

Importantly, a one-year period of limitations exists. 28 U.S.C. § 2255(f). This period ordinarily starts when the conviction became final. *Id*. § 2255(f)(1). Mr. Terrell's conviction became final in 2012, but the § 2255 motion was not filed until 2016. Mr. Terrell seeks to avoid the limitations bar by invoking 28 U.S.C. §

2255(f)(3). This provision extends the limitation period to one year from the date "on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).

The question in this case is whether Mr. Terrell has asserted an error falling within these narrow limits.

## III.    DISCUSSION

### *A.*  Scope of Terrell's Collateral Attack and the Rule 11(c)(1)(C) Plea

The Defendant and the Government agree that Defendant's 2009 Washington State conviction for residential burglary in violation of Wash.Rev.Code § 9A.52.025(1)-F, would fall under the *Johnson*-invalidated residual clause of the ACCA and furthermore, because the statute is indivisible and not subject to categorical analysis, this conviction could not *now* serve as a predicate "violent felony" offense under the ACCA.  (ECF No. 54 at 4).

Mr. Terrell contends he is serving an unconstitutional sentence because he did not know, nor did the court, that the Supreme Court would later invalidate ACCA's residual clause and remove his potential qualification under the ACCA.  Terrell refers to this as a "peril that colors all plea negotiations."  (ECF No. 55 at 1, n. 1). To be clear, Mr. Terrell is precluded from seeking collateral relief for any claimed deprivation based on an "improper[] [ACCA] threat[]" (ECF No. 46 at 1) or

erroneous assumption made by the parties prior to his guilty plea. A criminal defendant who pleads guilty implicitly waives the right to challenge any preconviction error, unless the alleged error relates directly to the voluntariness or intelligence of the guilty plea itself:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

Mr. Terrell has made clear he does not challenge the voluntariness of the guilty plea, seek vacatur of his guilty plea, nor seek to challenge any defect in the advice he received regarding the guilty plea. (ECF No. 60 at 6). Indeed, the law would preclude an attack of his guilty plea and conviction based upon later judicial pronouncements rendering prior assumptions incorrect. *See Brady v. U.S.*, 397 U.S. 742, 756–57 (1970)("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action). The only motion authorized by §2255 is an attack on the sentence.

Somewhat thornier issues are presented when the attack is on a sentence involving a Rule 11(c)(1)(C) plea agreement, where the plea and sentence are intertwined. The Rule allows the parties to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor

does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)."  The court is not permitted to accept or reject a Rule 11(c)(1)(C) on a piecemeal basis.  A valid question arises as to whether vacatur of the sentence is an available remedy in this context, or whether an attack on the sentence is also an attack on the plea.  The Seventh Circuit has ruled the court "cannot preserve a plea under Rule 11(c)(1(C) but dispose of the sentence." *U.S. v. Gibson*, 490 F.3d 604, 607 (7th Cir. 2007); *U.S. v. Gibson*, 356 F.3d 761, 765 (7th Cir. 2004).  However, the Ninth Circuit has permitted the challenge and vacatur of the sentence alone in the Rule 11(c)(1)(C) context, so long as the court gives the parties the opportunity to withdraw after the court exercises its discretion to accept or reject the agreement in a manner unaffected by the error.  *See U.S. v. Heredia*, 768 F.3d 1220 (9th Cir. 2014).

Plea negotiations and the plea agreement are central components of the United States' criminal justice system. *See Blackledge v. Allison*, 431 U.S. 63, 71 (1977). The plea process, if properly administered, stands to benefit not only the defendant and government, but also the courts and society. *Id*. It provides all interested parties certainty in the case's outcome, unlike a trial; conserves scarce judicial resources; and affords the public a measure of security. *Id.* These chief benefits are secured by according these dispositions a "great measure of finality." *Id.*  "Yet arrayed against this interest in finality is the very purpose of the writ of habeas corpus to safeguard a person's freedom from detention in violation of constitutional guarantees." *Id*.  A prisoner in custody after pleading guilty, no less than one convicted by a jury, "is entitled to avail himself of the writ in challenging the constitutionality of his custody." *Id*. at 72.

1    The court concludes the binding nature of the plea agreement does not itself

2    preclude the relief sought by Mr. Terrell.

3    **B. <u>Waiver</u>**

4    As part of Mr. Terrell's plea agreement, Terrell voluntarily and expressly

5    waived his "right to file any post-conviction motion attacking his conviction and

6    sentence, including a motion pursuant to 28 U.S.C. § 2255," except one based upon

7    ineffective assistance of counsel. A defendant may waive his right to collaterally

8    attack a conviction and sentence. *See United States v. Leniear*, 574 F.3d 668, 672 &

9    n.3 (9th Cir. 2009). Courts recognize strong public policy considerations justify the

10   enforcement of plea agreements containing knowing and voluntary waivers of

11   statutory rights of appeal or collateral attack because such "waivers usefully preserve

12   the finality of judgments and sentences imposed pursuant to valid plea agreements."

13   *United States v. Anglin*, 215 F.3d 1064, 1066 (9th Cir. 2000). Subsequent changes

14   in the law, which do not render the sentence unconstitutional, do not undercut the

15   validity of a collateral attack waiver.  *See U.S. v. Bibler*, 495 F.3d 621, 624 (9th Cir.

16   2007).  A waiver will not be invalidated merely because unanticipated events occur

17   in the future.  *See e.g.,  U.S. v. Eastwood*, 148 Fed. Appx. 589 (9th Cir. 2005)(waiver

18   enforceable and resentencing not warranted, despite changes in sentencing law

19   brought about by *U.S. v. Booker* holding the Guidelines were advisory and not

20   mandatory); *U.S. v. Morgan*, 406 F.3d 135 (2d Cir. 2005), *cert denied* 126 S.Ct. 549

21   (2005)(same); *c.f. Adesina v. United States*, 461 F.Supp.2d 90, 96 (E.D.N.Y. 2006)

22   ("Under the well-settled law of the Second Circuit, a valid waiver of the right to

23   appeal or otherwise challenge a sentence is enforceable as to subsequent changes in

the law, even as to constitutional arguments, that were not anticipated at the time the waiver was made.").

However, all federal courts agree that waivers are not ironclad. In the Ninth Circuit, a valid waiver "will not apply" if "the sentence violates the law." *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007). "A sentence is illegal if it exceeds the permissible statutory penalty for the crime or violates the Constitution." *Id*. The Ninth Circuit has held that if *Johnson* nullifies the residual clause of the Career Offender Guidelines, sentences rendered pursuant to that clause are likely unconstitutional and would be "illegal," and thus waivers in plea agreements cannot bar collateral attacks on that basis. *United States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016). Accordingly, the court must determine whether the sentence "violates the law" to determine whether the waiver applies.

The court flatly rejects Mr. Terrell's claim that his waiver is invalid because this court failed to satisfy Rule 11(b)(1)(N) during the plea colloquy. (ECF No. 55 at 7-8). Rule 11 provides that the court "must inform the defendant of, and determine that the defendant understands" "the terms of any plea agreement provision waiving the right of appeal or to collaterally attack the sentence." Mr. Terrell *omits* from the colloquy excerpts cited in the Reply brief that portion of the court's colloquy where it informed Mr. Terrell that the waiver applied to his "right to challenge the conviction *and sentence*." (ECF No. 45 at 11). Mr. Terrell also confirmed in writing and orally that he had carefully read and studied the plea agreement before signing it. *Cf. United States v. Davila*, 133 S.Ct. 2139, 2143 (2013) (explaining that although substantial compliance with Rule 11 is required, the purpose of Rule 11(h) is to guard against exalting 'ceremony...over substance').

ORDER - 14

C. **Merits**

Unlike in *Johnson*, Mr. Terrell does not allege he is serving a sentence in excess of the permissible statutory penalty for the crime.  Mr. Terrell contends his sentence is unconstitutional, violating the Fifth Amendment's Due Process Clause. His first habeas ground is that the sentence involved a Guidelines calculation relying upon an unconstitutionally vague definition of "crime of violence." But he also contends the court's sentencing analysis of the §3553(a) factors  was "tainted by *Johnson* error" when it considered Mr. Terrell's "charge bargain" and potential ACCA qualification.  (ECF No. 60 at 4).  Unlike most cases in which a prisoner claims to have been sentenced on the basis of misinformation, Mr. Terrell does not contend that the sentence imposed was unlawful at the time it was imposed – rather that it became unlawful when *Johnson* was decided by the Supreme Court. These contentions merit separate analysis. Mr. Terrell claims his Motion triggers §2255(f)(3) because his arguments are based upon the retroactive rule announced in *Johnson* that the residual clause of the ACCA is unconstitutionally vague.

### 1. *Reliance on the Residual Clause in the U.S.S.G §4B1.2(a)*

The focus of Mr. Terrell's Motion is primarily that his sentence violates due process because "his Guideline was improperly enhanced on the basis of his residential burglary conviction." This challenge to the "crime of violence" definition under the Guidelines, does not fall under § 2255(f)(3), because the substantive rule announced in *Johnson* did not cover the Guidelines. The unconstitutionality of the U.S.S.G. §4B1.2 was not "new right" announced in *Johnson*, nor even mentioned by the Supreme Court. *Beckles* will decide this question and if deemed retroactive to cases on collateral review, possibly provide a new basis for habeas petitions for

offenders sentenced under the Guidelines.  The Ninth Circuit has not held otherwise. *C.f. U.S. v. Jimenez-Segura*, 2016 WL 4718949 (E.D.Va. Sept. 8, 2016)(discussing the "widespread inattention" to § 2255(f)(3) at length and holding Defendant could not avail himself of §2255(f)(3) as *Johnson* did not cover 28 U.S.C. §924(c)); *U.S. v. Donnell*, 2016 WL 3525213 (M.D.Fla. June 28, 2016)(declining application of §2255(f)(3) because Defendant was sentenced under the Guidelines, not ACCA).

Even assuming, *arguendo*, that *Johnson* extends to the Guidelines and is retroactive to cases on collateral review, correcting the error alleged by Mr. Terrell in the presentence report would produce no change in the Guidelines calculation at all.  Mr. Terrell concedes that even if the burglary conviction had been disregarded, his offense level would remain the same because his conviction for harassment, and the Guidelines calculation would remain unchanged (63-78 months) "because his harassment conviction still qualifies" as a crime of violence.  (ECF No. 46 at 4, n. 1).  Thus, the preconditions for base offense level enhancement under § 2K2.1 were still present. It cannot be said that this error, if proven,  would be an error of constitutional magnitude rendering the sentence imposed by the court unconstitutional or constituting a miscarriage of justice sufficient to support a successful motion under § 2255.

### 2.  *Tainted Sentencing Proceeding*

In addition to arguing the court applied an unconstitutional definition of crime of violence, Mr. Terrell contends that *Johnson* renders his sentence unconstitutional for lack of due process because the court necessarily relied upon the assumption he was potentially ACCA qualified proved incorrect by *Johnson*.  The fact that Mr.

Terrell was potentially ACCA qualified and avoiding a 15-year mandatory minimum sentence was stated in the plea agreement, in the PSR, and in probation's sentencing recommendations to this court.   The record evinces that this information was the most influential factor in this court's decision to impose an upward departure within the parties' agreed sentencing range, even though the 100 month sentence exceeded the high end of the guideline range by 22 months.  Years later, *Johnson* dictates that this highly influential sentencing factor is erroneous, in fact unconstitutional, and it would not apply if Mr. Terrell were sentenced under constitutional considerations today.

As the writ serves as a catchall for alleged wrongs that are incapable of redress under other provisions of the law, habeas petitions must be reviewed by courts with "initiative and flexibility." *Harris v. Nelson*, 394 U.S. 286, 291 (1969). The question is whether it is an error of constitutional magnitude when a sentence, which does not exceed the maximum authorized by law, is enhanced based upon an assumption rendered erroneous by a subsequently rendered new rule of law made retroactive by the Supreme Court? To answer this question, the court first looks to due process standard and cases applying it in similar factual circumstances.

A district court may generally consider a wide variety of information when imposing sentence so long as that sentence is not based on misinformation of constitutional magnitude. *See, e.g., United States v. Monaco*, 852 F.2d 1143, 1149

(9th Cir. 1988), cert. denied, 488 U.S. 1040 (1989). Violations of a defendant's due process rights occur when a court relies on materially false or unreliable information in sentencing. *United States v. Safirstein*, 827 F.2d 1380, 1385 (9th Cir. 1987). To establish a due process violation at sentencing, defendant must 'must establish the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence. *United States v. Vanderwerfhorst*, 576 F.3d 929, 935–36 (9th Cir. 2009); *see also*, *United States v. Malcolm*, 425 F.2d 809 (2d Cir. 1970)(remanding based on the principle that "[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process.").

The Third Circuit has the most pertinent case involving a sentencing error based upon a legally flawed assumption discovered post-conviction and due process concerns. In *United States v. Eakman*, the defendant pleaded guilty to anabolic-steroids and money-laundering charges. The judge sentenced Eakman to one year and a day in prison, with a recommendation to the Bureau of Prisons that Eakman serve his sentence at a halfway house. A month into his sentence, a Justice Department memo concluded the Bureau lacked legal authority to assign prisoners to halfway houses while under a term of imprisonment and the Bureau accordingly transferred Eakman to prison. He brought a habeas motion under § 2255 claiming

the sentencing judge did not accurately understand the law governing the Bureau's

legal authority. The Third Circuit held that the circumstances *Eakman* alleged

would, if true, violate due process, and if a hearing showed such circumstances

existed Eakman deserved resentencing under an accurate understanding of the

Bureau's legal authority.

> In fact, it is hard to imagine how a sentence could ever be deemed fair when there is some way to verify the sentencing court's error externally (whether an error of fact or an error of law) and when that error caused the misguided sentence. Because such objectively ascertainable errors that a sentencing court has materially relied upon will always be of "constitutional magnitude," the appropriate test inquires whether (1) the district court made an objectively ascertainable error (one that does not require courts to probe the mind of the sentencing judge) and (2) the district court materially relied on that error in determining the appropriate sentence. If the answer to both questions is "yes," then-unless the record conclusively shows that the prisoner is not entitled to relief-the prisoner is entitled to a hearing. And if the court determines after the hearing that the error did indeed result in a miscarriage of justice, it must vacate the sentence and resentence the prisoner.

*Eakman*, 378 F.3d at 300.

It is unnecessary to "probe the mind" of this court to determine from the record

the significance of the erroneous conclusion that Mr. Terrell was ACCA qualified

played in Mr. Terrell's sentence.   Without this consideration, it is demonstrably

doubtful Mr. Terrell's plea agreement would have been accepted and his sentence

would have been as long as it was. The court concludes that it relied upon objectively

ascertainable erroneous information which demonstrably formed the basis of the

sentence imposed. Therefore, Mr. Terrell's sentence was imposed in violation of his right to due process.

Given the court's conclusion the sentence violates due process, it is unnecessary to decide whether Mr. Terrell's challenge is cognizable under the narrow contours of the miscarriage of justice standard. *See Davis v. United States*, 417 U.S. 333, 346 (1974)(where prisoner was incarcerated "for an act that the law does not make criminal," "[t]here [could] be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice."); *Johnson v. U.S.*, 544 U.S. 295 (2005)(if §2255 is timely filed, defendant is entitled to resentencing following state court vacatur of predicate conviction because "a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated."); *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (*quoting Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.").

## IV.    CONCLUSION

The court is mindful that §2255 is a narrowly limited error correction statute. Ordinarily, subsequent favorable changes in precedential law do not provide a basis for collateral attack.  The result reached here is highly dependent on the *Johnson* decision made retroactive under *Welch*, the favorable law of this Circuit, and the facts of this case, like other successful *Johnson* petitions in this Circuit involving

similar facts. *See e.g., U.S. v. Suttle*, 2016 WL 3448598 (E.D.Wash. June 20, 2016)(recognizing due process and interests of justice in granting habeas relief where court imposed sentence significantly higher than guideline range based upon assumption Defendant faced ACCA exposure); *Pressley v. U.S.*, 2016 WL 4440672 (W.D.Wash. Aug. 11, 2016)(finding error under the Guidelines was not the only "Johnson error" where the mistaken belief the Defendant qualified under ACCA "permeated the entire process").

Ultimately, the court must weigh the well settled interests in finality against notions of justice and due process in sentencing, in the face of the *unsettled* fall out of *Johnson v. United States*. After all, "without justice, finality is nothing more than a bureaucratic achievement, so we should resist the temptation to 'prostrate ourselves at the altar of finality, draped in the sacred shroud of judicial restraint,' when the facts indicate that a particular result is completely unjust." *Spencer v. U.S.*, 773 F.3d 1132 (111th Cir. 2014)(en banc)(Wilson, J., joined by others, dissenting). The retroactive decision of the U.S. Supreme Court in *Johnson v. United States* dictates that the assumption upon which Mr. Terrell's sentence was based was erroneous and this renders his enhanced sentence he is serving violative of due process. The claim is timely under 28 U.S.C. §2255(f)(3) and correction of this significant error overwhelms the interest in finality of the sentence imposed.

The court makes no judgment as to the impact the court's decision herein or at resentencing will have on the plea agreement itself.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Mr. Terrell's Motion to Vacate Sentence and for Resentencing (ECF No. 46) is **GRANTED**.

2. The Government's Motion to Hold Petitioner's Motion in Abeyance (ECF No. 50) is **DENIED**.

3. Judgment in these criminal cases is **VACATED** and Defendant shall be resentenced as soon as reasonably practicable. A separate scheduling order will be entered.

4. The Defendant is to remain in custody pending resentencing. **If the Defendant is housed at a Bureau of Prisons facility,** the United States shall issue a writ for the Defendant's transport, reasonably in advance of resentencing to ensure the Defendant's presence for purposes of a presentence investigation report interview with the Probation Officer.

5. Probation Office shall prepare an expedited supplemental Presentence Investigation Report including any facts relevant to post-conviction rehabilitation.

///

6. The parties are granted leave to file sentencing memoranda as to the sentence to be imposed and the procedure to be employed in imposing the sentence.

DATED this 4th day of November, 2016.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
SENIOR U.S. DISTRICT COURT JUDGE